UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JULIE BURGESS, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| v. ) | Case No. 4:22-cv-00063-SRC |
| ) | |
| CS3 BP ASSOCIATES LLC, ) | |
| ) | |
| Defendant(s). ) | |

**Memorandum and Order**

Facing allegations that it violated the Americans with Disabilities Act, CS3 BP Associates LLC moves to dismiss this case, arguing that structural changes it made to its shopping-center parking lot render Julie Burgess's claims moot. Relying on her expert's parking-lot measurements, Burgess argues that despite these changes, some of her claims remain un-addressed. Additionally, Burgess moves for leave to amend her Complaint to include additional ADA violations in the parking lot and inside the shopping center. In response, CS3 argues that amendment is futile because Burgess lacks standing to bring the new claims. The Court denies both motions.

**I.     Background**

The ADA, 42 U.S.C. §§ 12101–12213, prohibits discrimination in places of public accommodation against individuals with disabilities. 42 U.S.C. § 12182(a). According to the ADA, "discrimination" includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The ADA provides to "any person who is being

subjected to discrimination on the basis of disability" a private right of action for injunctive relief. 42 U.S.C. § 12188(a).

Codified at 28 C.F.R. Part 36, the ADAAG, which stands for "ADA Accessibility Guidelines," "is a comprehensive set of structural guidelines that articulates detailed design requirements to accommodate persons with disabilities." *Davis v. Anthony, Inc.*, 886 F.3d 674, 676 n.2 (8th Cir. 2018) (quoting *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 986 (9th Cir. 2014)).

Burgess states that she is an individual with disabilities as defined by the ADA, and that she uses a wheelchair for mobility purposes. Doc. 1 at ¶¶ 4, 6. Burgess also alleges that she is an "independent advocate of the rights of similarly situated disabled persons" and a "tester" who monitors "whether places of public accommodation are in compliance with the ADA." Doc. 1 at ¶ 7. This case stems from a visit Burgess allegedly made in November 2021 to a St. Louis County shopping center that CS3 owns and leases to businesses including Massage Envy. Doc. 1 at ¶¶ 9–10.

According to Burgess, during her November 2021 visit she "attempted to but was deterred from patronizing and/or gaining equal access as a disabled patron to the Massage Envy and shopping center . . . ." Doc. 1 at ¶ 9. She identifies a number of alleged ADA violations in the parking lot of the shopping center, including: (1) a lack of van-accessible parking, (2) issues with the signs marking accessible parking spaces, (3) poorly maintained paint delineating accessible parking spaces and access aisles, (4) improperly sloped curb ramps, and (5) access isles with curb ramps projecting into them, or that "are otherwise not level in all directions . . . ." Doc. 1 at ¶¶ 25(a)–(e). Burgess also brings a failure-to-maintain claim. Doc. 1 at ¶¶ 25(l)–(m).

2

CS3 filed a motion to dismiss for lack of jurisdiction. Doc. 18. Burgess responded, and after Burgess's ADA expert and counsel for both parties conducted a site inspection, filed a motion for leave to amend her Complaint. Docs. 23, 24. The parties have fully briefed both motions. Docs. 19, 23, 25, 27–29.

**II.     Standards**

**A.     Rule 12(b)(1) standard**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for lack of subject-matter jurisdiction. To invoke federal jurisdiction, a plaintiff must demonstrate the existence of an actual and concrete dispute. *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018). If at any point before or during the proceedings the case becomes moot, the Court's jurisdiction dissipates. *Id.* "In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings." *Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018).

"In a facial attack, . . . the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Davis*, 886 F.3d at 679 (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). But "[i]n a factual attack, . . . the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (quoting *Osborn*, 918 F.2d at 729 n.6). To survive a motion to dismiss for lack of subject-matter jurisdiction, the party asserting jurisdiction has the burden of establishing that subject-matter jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

3

### B. Leave-to-amend-pleadings standard

Rule 15(a) of the Federal Rules of Civil Procedure governs motions for leave to amend pleadings, and states that courts "should freely give leave [to amend] when justice so requires." Under Rule 15's liberal amendment policy, "denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Hillesheim v. Myron's Cards & Gifts, Inc. (Hillesheim I)*, 897 F.3d 953, 955 (8th Cir. 2018) (quoting *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)); *see also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) ("A court abuses its discretion when it denies a motion to amend a complaint unless there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.").

"An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Hillesheim I*, 897 F.3d at 955 (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). In other words, "[a]lthough ordinarily the decision of whether to allow a plaintiff to amend the complaint is within the trial court's discretion, when a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion . . . ." *In re Senior Cottages of Am.*, LLC, 482 F.3d 997, 1001 (8th Cir. 2007) (citing Fed. R. Civ. P. 12).

### III. Discussion

CS3 moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, Doc. 18, and Burgess moves for leave to amend her Complaint, Doc. 24. As explained below, the

4

Court finds that it has subject-matter jurisdiction over Burgess's original Complaint, but finds that her proposed amendment would be futile.

### A. Motion to dismiss for lack of subject-matter jurisdiction

#### 1. Factual attack on jurisdiction

CS3 moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. Doc. 18. The parties each provided affidavits and photographs documenting modifications to the property, *see* Doc. 19-1 to -2; Doc. 23-1 to -6, and do not dispute that CS3's Rule 12(b)(1) motion is a factual attack on jurisdiction. The Court agrees. *See Davis*, 886 F.3d at 679.

The Eighth Circuit instructs that when considering a 12(b)(1) factual attack,

> . . . the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Osborn*, 918 F.2d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). As "the party invoking federal jurisdiction," Burgess "must prove jurisdictional facts by a preponderance of the evidence." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018) (citing *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 347 (8th Cir. 2007)). And "[o]nce the evidence is submitted, the [Court] must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Osborn*, 918 F.2d at 730 (citing *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986)).

#### 2. Mootness

In its factual attack on jurisdiction, CS3 argues that because it has remediated all of Burgess's alleged ADA violations, the case is now moot. Doc. 19 at p. 1. "Under Article III of

5

the Constitution, federal courts may decide only actual, ongoing cases or controversies." *Hillesheim v. Holiday Stationstores, Inc. (Hillesheim III)*, 953 F.3d 1059, 1061 (8th Cir. 2020) (quoting *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004)).  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).  "Generally, a claim is moot when changed circumstances already provide the requested relief and eliminate the need for court action."  *Id.* (quoting *Hillesheim v. Holiday Stationstores, Inc. (Hillesheim II)*, 903 F.3d 786, 791 (8th Cir. 2018)).

Among other things, CS3 argues that "as demonstrated through pictures and affidavits," the changes it made to the accessible parking spots and adjacent access aisles rendered those access aisles "otherwise sufficiently level to comply with the ADA and ADAAG."  Doc. 19 at p. 8 (citing Docs. 19-1 and 19-2).  Burgess disagrees, arguing based on her ADA-inspector's measurements that CS3 failed to remediate the slope of two accessible-parking-space-adjacent access aisles.  Doc. 23 at p. 6.  CS3 does not introduce its own access-aisle-slope measurements in reply, or argue that Burgess's ADA-inspector's measurements are incorrect.  *See* Doc. 27.

Section 502.4 of the 2010 ADAAG, which applies to alterations after March 15, 2012, *see* 28 C.F.R. § 36.406(a)(3), states:  "Parking spaces and access aisles serving them shall comply with 302.  Access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted." 36 C.F.R. § Pt. 1191, App. D.  Section 502.4 also states: "Exception:  Slopes not steeper than 1:48 shall be permitted."  *Id.*  1:48 converts to 2.083%.

6

### a. CS3's evidence

CS3 provides an affidavit by Gabriel DuBois, design director for the company that designed the structural changes to the shopping-center parking lot. Doc. 19-1. CS3 also provides an affidavit by its property manager, Steve Flens, as well as pictures Flens took of the property after CS3 made structural changes. Doc. 19-2.

DuBois states that the two handicap-accessible parking spaces do not have curb ramps projecting into them, and that the "slope of the surface" of each access aisle is "in full compliance with the ADA and ADAAG." Doc. 19-1 at ¶¶ 12–13. Flens does not address the slope of the access aisles; though, like DuBois, he does state that each aisle no longer has a curb ramp projecting into it. Doc. 19-2 at ¶¶ 11–12. Attached to Flens's affidavit are pictures of the parking spaces and access aisles, though the pictures do not contain any measurements. *See id.* at pp. 6–7, 10–13.

### b. Burgess's evidence

Burgess provides an affidavit by Blake Watts, who performed an ADA inspection of the property on May 6, 2022. Doc. 23-2 at ¶ 4. During the inspection, Watts measured the slope of the two access aisles at issue using a 2-foot digital level. *Id.* at ¶ 13. According to Watts's measurements, one of the access aisles contains a "running slope of 3.9%," *id.* at ¶ 32, and the other contains a "running slope of 3.7%." *Id.* at ¶ 48. Watts provides pictures of his 2-foot level measuring each access-aisle's slope. Doc. 23-3 at pp. 17–19, 36, 42–43. In reply, CS3 does not attempt to rebut Watts's measurements, or provide alternative measurements. *See* Doc. 27.

Having considered the parties' affidavits and attached exhibits, the Court finds, for purposes of jurisdiction only, that Burgess has shown by a preponderance of the evidence that the slope of the access aisles exceeds 1:48, in violation of Section 502.4 of the 2010 ADAAG.

### c.     CS3's vagueness argument

In its initial memorandum in support, CS3 recognizes the access-aisle slope claim as one specific enough to require a response: it points to pictures and affidavits demonstrating that, among other things, "the access aisles are otherwise sufficiently level to comply with the ADA and ADAAG." Doc. 19 at p. 8 (citing Docs. 19-1 and 19-2). And as noted above, in his affidavit DuBois stated that the slope of the access aisles complied with the ADA and ADAAG. Doc. 19-1 at ¶¶ 12–13.

In its reply, CS3 attempts to walk back this apparent recognition, arguing for the first time that the access-aisle-slope allegations in the Complaint are "too vague to state a specific claim" and "potentially allege *numerous* different unspecified faults or violations of various sections of the ADA." Doc. 27 at p. 4. To support this argument, CS3 relies on three Eighth Circuit cases: *Dalton*, *Davis*, and *Hillesheim III*. Doc. 27 at p. 5. But CS3 misreads the holding in *Dalton*, and *Davis* and *Hillesheim III* are distinguishable.

According to CS3, in *Dalton v. NPC Int'l, Inc.*, 932 F.3d 693 (8th Cir. 2019), the Eighth Circuit "affirm[ed] the dismissal of a plaintiff's complaint for violations of the ADA as moot where the allegations of violations were 'vague and conclusory.'" Doc. 27 at p. 5. But while the district court in that case dismissed various claims as vague and conclusory, the Eighth Circuit affirmed on a different basis, concluding that the plaintiff "lack[ed] standing to sue over building violations," including accessibility of entrances and exits, "when he never entered [the building]." *Dalton*, 932 F.3d at 696. *Dalton* does not support CS3's mootness argument.

In *Davis*, the plaintiff argued that her lawsuit was not moot because the defendant's remediation evidence was "utterly silent as to the slopes of the newly-installed spaces." 886 F.3d at 677. She argued that her allegation that "[t]he accessible parking spaces in the

8

[steakhouse's] customer parking lot lacked adjacent access aisles, in violation of ADAAG 502.2" included an allegation of an ADAAG 502.4 slope violation. *Id.* But the Eighth Circuit noted that her allegation "focuse[d] only on ADAAG 502.2, which does not mention slope," and concluded that "a reference to ADAAG 502.2 does not state a plausible claim for a violation of ADAAG 502.4." *Id.* (citing *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) ("A plausible claim must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)))).

In *Hillesheim III*, the plaintiff argued that a measurement dispute regarding the flared sides of curb ramps created an issue of material fact preventing summary judgment for the defendant. 953 F.3d at 1061. The defendant countered that the dispute was not material because the complaint provided "no fair notice about any issue with the flared sides." *Id.*

The Eighth Circuit sided with the defendant, finding that: (1) the complaint did not mention ADAAG 406.3, which governs the slope of the flared sides of curb ramps, and (2) the complaint's "one mention of ADAAG '406' in a string citation of requirements for accessible routes and parking spaces," without mentioning "flared sides," did not provide sufficient notice. *Id.* at 1061–62 (citing Fed. R. Civ. P. 8(a)(2) (requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) ("[T]he complaint must say enough to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (internal quotation marks omitted))). The Eighth Circuit concluded that "[a]s in the *Davis* case, the specifically alleged violations were remediated, and the complaint did not give fair notice of the flared-sides issue. *Id.* at 1062 (citing *Davis*, 886 F.3d at 677).

9

Here, unlike the plaintiffs in *Davis* and *Hillesheim III*, in her Complaint Burgess specifically mentions the access-aisle-slope issue and the precise corresponding ADAAG section. She alleges that:

> The access aisle adjacent to the designated accessible space in front of Massage Envy has a curb ramp projecting into it and/or has surfaces which are otherwise not level in all directions in violation of 28 [C.F.R.] § 36.211, Section 4.6.3 of the 1991 ADAAG and Section 502.4 of the 2010 ADAAG. These violations made it dangerous for Plaintiff to utilize the parking facility at the Subject Property and caused Plaintiff undue upset and loss of opportunity.

Doc. 1 at ¶ 25(f). Similarly, she alleges that:

> The access aisle adjacent to the designated accessible space in front of Olympia Gymnastics has a curb ramp projecting into it and/or has surfaces which are otherwise not level in all directions in violation of 28 [C.F.R.] § 36.211, Section 4.6.3 of the 1991 ADAAG and Section 502.4 of the 2010 ADAAG. These violations made it dangerous for Plaintiff to utilize the parking facility at the Subject Property and caused Plaintiff undue upset and loss of opportunity.

Doc. 1 at ¶ 25(h); *see also* Doc. 1 at ¶ 25(j) (identically repeating the allegation in ¶ 25(h)). The Court finds that the Complaint gave fair notice of the access-aisle slope issue.

Because the Court finds that CS3 failed to remediate the slope of the access aisles, and that Burgess specifically alleged her access-aisle-slope claims, the Court finds that those claims are not moot. *See Hillesheim II*, 903 F.3d at 790. Thus, the Court need not, and does not, address Burgess's alternative argument against mootness—that "barriers identified in the Complaint may reoccur at some point in time . . . ." Doc. 23 at pp. 6, 9–12. The Court accordingly denies CS3's motion to dismiss.

### B. Motion for leave to amend the Complaint

Burgess's original Complaint alleges specific barriers to access she "experienced and/or observed" in the parking lot of CS3's shopping center. Doc. 1 at ¶ 25. Burgess moves for leave to amend her Complaint "to include all the barriers that she encountered and/or are present on

10

Defendant's property that discriminate against persons who use a wheelchair for mobility." Doc. 25 at p. 1.

In support of her motion for leave to amend, Burgess reasons that "relevant factors weigh in favor of granting leave," including: (1) the motion is timely; (2) she has not previously sought to amend her pleadings; and (3) the new claims "arise out of the same facts and circumstances and should come as no surprise to Defendant." Doc. 25 at p. 2 (citing Doc. 1 at ¶ 7). Burgess also argues, without further elaboration, that amendment is not futile because her proposed Amended Complaint states a claim for relief that is plausible on its face. *Id.*

In response, CS3 first argues that the Court "lacks subject matter jurisdiction over the case or the power to take any action besides dismissing the Complaint," because the claims in Burgess's original Complaint are moot, Doc. 28 at p. 2; having found that Burgess continues to assert justiciable claims in her original Complaint, the Court rejects this argument.

Next, CS3 argues that amendment is futile because Burgess lacks standing to bring the new claims. The Eighth Circuit has often stated that when a court denies leave to amend on the basis of futility, "it means [it] has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *See, e.g.*, *Cornelia*, 519 F.3d at 782 (citing *In re Senior Cottages of America, LLC*, 482 F.3d at 1001).

However, standing is a "threshold question," *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003), and the Eighth Circuit has also defined futility in the leave-to-amend context to mean that "the amended complaint could not withstand a Rule 12 motion," and has evaluated whether a proposed amended complaint could "survive a motion to dismiss for lack of standing." *See In re Senior Cottages of Am., LLC*, 482 F.3d at 1001, 1005.

Thus, the Court considers whether Burgess's proposed amended complaint could survive a motion to dismiss for lack of standing, and whether it could survive a motion to dismiss for failure to state a claim.

1. **Lack of standing**

In *In re Senior Cottages of Am., LLC*, the Eighth Circuit determined by looking at the face of the pleadings that "the assertions in the amended complaint and incorporated state court judgment are sufficient to allege some injury and thus to survive a motion to dismiss for lack of standing." 482 F.3d at 1005. The Court likewise conducts a "facial" analysis here of the allegations in Burgess's proposed Amended Complaint, granting her the same protections she would enjoy "defending against a motion brought under Rule 12(b)(6)." *Davis*, 886 F.3d at 679 (quoting *Osborn*, 918 F.2d at 729 n.6).

Like mootness, "[s]tanding is one aspect of the constitutional requirement that courts may only decide cases or controversies." *In re Senior Cottages of Am., LLC*, 482 F.3d at 1004 (citing *Novartis Seeds, Inc. v. Monsanto Co.*, 190 F.3d 868, 871 (8th Cir. 1999)). "To have standing, a plaintiff must allege an injury that is fairly traceable to the defendant's conduct, and the requested relief must be likely to redress the alleged injury." *Id.* (quoting *Novartis Seeds*, 190 F.3d at 871). Of the three elements of standing, injury in fact is the "first and foremost." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)).

The Court finds *Davis* instructive. In that case, the Eighth Circuit found that "Davis has standing to sue for the parking-space violations she encountered." *Davis*, 886 F.3d at 678 (citing *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000)). Davis argued based on *Steger* that "standing to sue for the parking-space violations she encountered also includes her standing to

12

sue for violations inside the steakhouse that she did not encounter." *Davis*, 886 F.3d at 678. But the Eighth Circuit rejected Davis's proposed "extension" of *Steger*, holding that:

> In *Steger*, the plaintiff Burch encountered, inside a building, a violation that affected his disability. *Steger*, 228 F.3d at 891–92. This court held that Burch's encounter with a violation in the *building* gave him standing to sue for unencountered violations in that building. *Id.* at 894.
>
> The *Steger* case expands standing only when the plaintiff encounters a violation in a building. Unlike Burch, Davis did not enter the steakhouse—a "building" under the ADAAG. *See* 36 C.F.R. pt. 1191, app. B, § 106.5 (a "building" is "[a]ny structure used or intended for supporting or sheltering any use or occupancy."). She encountered only the parking space—which is not within the definition of "building." *Compare id. with id.* at § 208.3.1 (noting that parking spaces serve buildings). Davis cannot use the violation encountered in the parking space to expand her standing to sue for unencountered violations inside the steakhouse that never injured her. *See Spokeo*, 578 U.S. at 338–39 ("injury in fact" is "the first and foremost of standing's three elements.") (citation and internal quotation marks and alteration omitted); *Sierra Club v. U.S. Army Corps of Engineers*, 446 F.3d 808, 814 (8th Cir. 2006) ("Jurisdictional issues such as standing . . . are determined at the time the lawsuit was filed.").

*Davis*, 886 F.3d at 678.

Like Davis, Burgess has standing to sue for specific barriers to access that she encountered in the parking lot. *See* Doc. 1 at ¶ 25. Also like Davis, Burgess invokes *Steger*, arguing that it "permits Plaintiff who encountered at least one ADA violation at Massage Envy to challenge alleged violations that could injure persons using a wheel chair for mobility in parts of the shopping center building Plaintiff has never been [sic]." Doc. 29 at p. 8 (citing *Steger*, 228 F.3d at 893–94); *see also id.* (arguing that "under *Steger* and its progeny, [Burgess's] ADA claims may include additional violations at the shopping center that [she] knows about from her expert's inspection but did not personally encounter"). But like Davis, Burgess "cannot use the violation encountered in the parking space to expand her standing to sue for unencountered violations inside the [building] that never injured her." *Davis*, 886 F.3d at 678. Thus, Burgess

13

must allege she encountered a violation inside the shopping center building to bring the new claims in her proposed Amended Complaint.

However, the Court notes that Burgess fails to allege—in her original Complaint or proposed Amended Complaint—that she actually entered any part of the shopping center building. Instead, her original Complaint contains the allegation that in November 2021 she "attempted to, but was deterred from patronizing and/or gaining equal access as a disabled patron to the Massage Envy and shopping center . . . ." Doc. 1 at ¶ 9. And in her proposed Amended Complaint, she adds the allegation that in May 2022 she "attempted to but was deterred from patronizing and/or gaining equal access as a disabled patron to Massage Envy, Lavish Nails, and the remainder of the shopping center." Doc. 24-2 at ¶ 10. Further, in her proposed Amended Complaint she alleges generally that she "experienced and/or observed" the alleged ADA violations inside and outside the building—thus failing to identify which violations she actually encountered, if any. Doc. 24-2 at ¶ 26.

Additionally, as under *Davis*, standing to bring claims of ADA violations inside the building depends on Burgess's actually encountering a violation inside the building, the allegation in paragraph 26 of her proposed Amended Complaint—that she "experienced and/or observed" each listed violation—fails to establish an injury in fact, as her use of "and/or" makes an injury in fact only one of various possibilities. *See Dalton*, 932 F.3d at 695 ("Though lack of knowledge precludes standing, mere knowledge of barriers does not create standing.").

The Court concludes that Burgess's proposed Amended Complaint could not survive a motion to dismiss for lack of standing; thus, amendment would be futile, and the Court denies leave to amend for this reason alone.

14

### 2. Failure to state a claim

The Court finds that amendment would be futile for another reason: failure to state a claim. The notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiff to give "a short and plain statement showing that the pleader is entitled to relief . . . ." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

In *Gregory v. Dillard's, Inc.*, the *en banc* Eighth Circuit found that a section of the complaint titled "jurisdiction and venue" that referred to "all plaintiffs and use[d] the 'and/or' formulation" failed to "connect any particular plaintiff to any particular allegation." 565 F.3d 464, 473 n.9 (8th Cir. 2009). The court also found that a section of the complaint titled "class action allegations" similarly "use[d] 'and/or' within a series of allegations and refer[red] to 'one or more' actions taken by [the defendant] without specifying which action or actions allegedly appl[ied] to which plaintiff or plaintiffs." *Id.* (citing *Ollilo v. Clatskanie Peoples' Util. Dist.*, 132 P.2d 416, 419 (Or. 1942) (observing that the use of "and/or" "generally tends toward confusion" and describing "and/or" as "a sort of verbal monstrosity which courts have quite generally condemned")).

As noted above, Burgess alleges that she "experienced and/or observed" the ADA violations listed in her proposed Amended Complaint. Doc. 24-2 at ¶ 26. The Court finds that amendment would be futile because Burgess's use of the "verbal monstrosity" construction "and/or" obscures her allegations to the point that she fails to state a claim. The Court denies leave to amend for this reason, as well.

## IV.     Conclusion

The Court denies without prejudice CS3's [18] Motion to Dismiss, and denies Burgess's [24] Motion for Leave to Amend the Complaint.

So Ordered this 8th day of July 2022.

                                                                               *SL R. Cl*
                                                          _____
                                                          STEPHEN R. CLARK
                                                          UNITED STATES DISTRICT JUDGE